O

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   TANYA MALCH a/k/a TANYA          )   Case No. EDCV 15-00517 DDP (KKx)
     PETROVNA,                        )
12                                    )
                      Plaintiff,      )
13                                    )
            v.                        )   **ORDER GRANTING DEFENDANTS' MOTION
14                                    )   TO DISMISS IN PART**
     DANIEL G. DOLAN, an              )
15   individual; ANDREA McGINTY,      )
     an individual; NATIVE FOOD       )
16   HOLDINGS, LLC, a Nevada
     Limited Liability Company;
17   NATIVE FOODS ILLINOIS, LLC,          [Dkt. 35]
     an Illinois Limited
18   Liability Company; NATIVE
     FOODS ILLINOIS WHOLESALE,
19   LLC, an illinois Limited
     Liability Company; NATIVE
20   FOODS MANAGEMENT, LLC, a
     Nevada Limited Liability
21   Company; NATIVE FOOD CLARK
     STREET, LLC, an Illinois
22   Limited Liability Company;
     NATIVE FOODS WHOLESALE,
23   LLC,a  Nevada Limited
     Liability Company; NATIVE
24   FOODS CALIFORNIA, LLC, a
     Nevada Limited Liability
25   Company; NATIVE FOODS
     BUCKTOWN, LLC, an Illinois
26   Limited Liability Company;
     NATIVE FOODS HOLDING
27   CORPORATION, a Delaware
     corporation,
28
                      Defendants.
     _____

Presently before the court is Defendants' Motion to Dismiss portions of Plaintiff's Second Amended Complaint ("SAC").  Having considered the submissions of the parties, the court grants the motion and adopts the following Order.

**I.   Background**

As described in this court's earlier Order, Plaintiff Tanya Malch ("Malch"), known professionally as "Chef Tanya," opened a chain of vegan "Native Foods" restaurants that grew by 2008 to include five locations in the Southern California area. In 2008, Defendants Daniel Dolan and Andrea McGinty, through Native Foods Holdings LLC ("NFH"), acquired the restaurants from Malch.  The acquisition agreements also included an agreement to employ Malch for executive services, but the relationship soon soured.

Malch formally separated from Native Foods on October 31, 2012, and executed a settlement and release agreement ("the Agreement") signed by Defendants NFH, Dolan, and McGinty.  The Agreement required cessation of use of Malch's name, image, or likeness by November 20, 2013, and bound the parties and "their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors, and assigns."

On dates beyond November 20, 2013, a Native Foods restaurant in Orange County, California, and a Native Foods restaurant in Chicago, Illinois, used Malch's name, image, or likeness.  Native Food Restaurants' website also included a link to a YouTube video that used Malch's name, image, or likeness.

1     Malch's Complaint alleges seven causes of action, including
2  breach of the Agreement, against eleven named defendants: Dolan,
3  McGinty, NFH, Native Foods Holding Corporation ("NFHC"), and seven
4  of NFHC's subsidiary LLC's, including Native Foods Illinois LLC
5  ("NFILL"), Native Foods Illinois Wholesale LLC ("ILLWH"), Native
6  Foods Management LLC, Native Foods Clark Street LLC ("Clark"),
7  Native Foods Wholesale LLC, Native Foods California LLC, and Native
8  Foods Bucktown LLC ("Buck") (collectively with Dolan and McGinty
9  "Native Foods Restaurants").  Defendants now move to dismiss all
10 claims against the latter eight defendants (collectively, "the
11 Foreign Defendants") for lack of personal jurisdiction and to
12 dismiss the breach of contract claim for failure to state a claim.
13 All Defendants also move to dismiss Plaintiff's cause of action for
14 unfair business practices because it seeks damages unavailable
15 under California's UCL.

16 **II.  Legal Standard**

17     A complaint will survive a motion to dismiss when it contains
18 "sufficient factual matter, accepted as true, to state a claim to
19 relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.
20 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
21 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must
22 "accept as true all allegations of material fact and must construe
23 those facts in the light most favorable to the plaintiff." Resnick
24 v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
25 need not include "detailed factual allegations," it must offer
26 "more than an unadorned, the-defendant-unlawfully-harmed-me
27 accusation."  Iqbal, 556 U.S. at 678.  Conclusory allegations or
28 allegations that are no more than a statement of a legal conclusion

3

1    "are not entitled to the assumption of truth." Id. at 679. Even
2    under the liberal pleading standard of Federal Rule of Civil
3    Procedure 8(a)(2), under which a party is only required to make a
4    "short and plain statement of the claim showing that the pleader is
5    entitled to relief," a "pleading that offers 'labels and
6    conclusions' or a 'formulaic recitation of the elements of a cause
7    of action will not do.'" Id. 678 (quoting Twombly, 550 U.S. at
8    555).

9         Federal Rule of Civil Procedure 12(b)(2) provides that a court
10   may dismiss a suit for lack of personal jurisdiction.  The
11   plaintiff has the burden of establishing that jurisdiction exists,
12   but need only make "a prima facie showing of jurisdictional facts
13   to withstand the motion to dismiss." Pebble Beach Co. v. Caddy,
14   453 F.3d 1151, 1154 (9th Cir. 2006). "Uncontroverted allegations in
15   the complaint must be taken as true, and conflicts over statements
16   contained in affidavits must be resolved in [the plaintiff's]
17   favor." Love v. Associated Newspapers. Ltd., 611 F.3d 601, 608
18   (9th Cir. 2010).

19   **III. DISCUSSION**

20        A.  Personal Jurisdiction

21        Because California's long-arm statute authorizes personal
22   jurisdiction coextensive with the Due Process Clause of the United
23   States Constitution, this Court may exercise personal jurisdiction
24   over a nonresident defendant when that defendant has "at least
25   'minimum contacts' with the relevant forum such that the exercise
26   of jurisdiction 'does not offend traditional notions of fair play
27   and substantial justice.'" Schwarzenegger v. Fred Martin Motor
28   Co., 374 F.3d 797, 800-01 (9th Cir. 2004) (citing Int'l Shoe Co. v.

1   <u>Washington</u>, 326 U.S. 310, 316 (1945)); Cal. Civ. Code § 410.10.

2   The contacts must be of such quality and nature that the defendants

3   could reasonably expect being haled into court there.   <u>World-Wide</u>

4   <u>Volkswagen v. Woodson</u>, 444 U.S. 286, 297 (1980).

5       Personal jurisdiction may be either general or specific.

6   <u>Ziegler v. Indian River Cnty.</u>, 64 F.3d 470, 473 (9th Cir. 2004).

7   General jurisdiction exists over a non resident defendant when "the

8   defendant engages in 'continuous and systematic general business

9   contacts' that 'approximate physical presence' in the forum state."

10  <u>Schwarzenegger</u>, 374 F.3d at 801.   Where a defendant is subject to a

11  state's general jurisdiction, he "can be haled into court in that

12  state in any action, even if the action is unrelated to those

13  contacts."   <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466

14  U.S. 408, 415 (1984).   "Factors to be taken into consideration are

15  whether the defendant makes sales, solicits or engages in business

16  in the state, serves the state's markets, designates an agent for

17  service of process, holds a license, or is incorporated there."

18  <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082,

19  1086 (9th Cir. 2000).

20          1.   NFCH

21      The bulk of the parties' briefing centers on the adequacy of

22  alter ego allegations against the Foreign Defendants.   Plaintiff

23  makes an additional argument, however, that NFCH does have a

24  physical presence in California.   Defendants, citing to Defendant

25  Dolan's declaration, contend that NFCH, a Delaware corporation, has

26  never done business in California.   (Dolan Declaration, ¶ 2.)

27  Exhibit 2 to the SAC, however, which is drawn from the Native Foods

28  website maintained by NFCH, appears to indicate that NFCH operates

5

1  some type of customer service facility in Palm Desert, CA, or did

2  so at some point in 2015.  Defendants' Reply does not address this

3  argument.  Accordingly, Defendants' motion to dismiss NFCH for lack

4  of personal jurisdiction is denied, without prejudice.

5          2.  Foreign LLCs

6      Other than Defendant NFCH, the Foreign Defendants

7  (hereinafter, the "Foreign LLCS") are all limited liability

8  corporations and subsidiaries of NFCH.  Plaintiff contends that

9  this court has personal jurisdiction over the Foreign LLCs because

10  they are alter egos of Defendant Dolan, McGinty, NFH, and/or NFHC.

11      Where any alter ego defendant is subject to jurisdiction in

12  the forum, all alter ego defendants are held to have the requisite

13  presence for jurisdiction within the forum.  Certified Bldg.

14  Products, Inc. v. NLRB, 528 F.2d 968 (9th Cir. 1976).  Alter egos

15  must have such a unity of interest and ownership that the

16  individuality of the person and corporation cease to exist.  In re

17  Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010).  In the parent-

18  subsidiary context, a plaintiff must show that the parent has

19  "pervasive control over the subsidiary, such as when a parent

20  corporation dictates every facet of the subsidiary's business –

21  from broad policy decisions to routing matters of day-to-day

22  operation."  Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir.

23  2015) (internal quotations and citation omitteD).  A wide variety

24  of factors may be pertinent to the alter ego inquiry, depending on

25  the circumstances of the particular case.  Assoc. Vendors, Inc. v.

26  Oakland Meat Co., 210 Cal. App. 2d 825, 838 (1962).  These factors

27  include, but are not limited to, commingling of funds, unauthorized

28  diversion of corporate funds to other uses, failure to maintain

1    adequate corporate records, sole or family ownership of all of the

2    stock in a corporation, failure to adequately capitalize a

3    corporation, use of a corporation as a conduit for the business of

4    an individual, disregard of legal formalities, and diversion of

5    assets from a corporation to a stockholder to the detriment of

6    creditors.  <u>Schwarzkopf</u>, 626 F.3d at 1038; <u>Zoran Corp. v. Chen</u>, 185

7    Cal. App. 4th 799, 811-12 (2010); <u>Assoc. Vendors</u>, 210 Cal. App. 2d

8    at 838-39.

9         It is Plaintiff's burden to make a prima facie showing that

10   personal jurisdiction exists and that the out-of-state Defendants

11   are alter egos.  <u>See</u> <u>Vista v. USPlabs, LLC</u>, No. 14-cv-00378-BLF,

12   2014 WL 5507648 at *1-2 (N.D. Cal. Oct. 30, 2014); <u>Pelican</u>

13   <u>Commc'ns, Inc. v. Schneider</u>, No. C-14-4371 EMC, 2015 WL 527472 at

14   *2 (N.D. Cal. Feb. 6, 2015).  While uncontroverted allegations in

15   the Complaint must be taken as true, a plaintiff must produce some

16   evidence to counter evidence presented by a defendant to challenge

17   alter ego liability.  <u>Pelican</u>, 2015 WL 527472 at *2.  The SAC does

18   include conclusory allegations regarding several of the alter ego

19   factors, as well as specific allegations that "Doland (sic) and

20   McGinty would have the Entity Defendants commingle funds out of the

21   cash registers . . . if one of the Restaurants needed cash and the

22   banks were closed . . . [and] used cash from the Entity Defendants'

23   (sic) to fund their child's baby sitter and personal purchases from

24   the family."  (SAC ¶ 44.)  Defendants have submitted extensive

25   declarations refuting Plaintiff's contentions and indicating that

26   none of the alter ego factors are met.  (See Declarations of Dolan,

27   McGinty, Craig Grimes, Peter S. H. Grubstein, and Thomas Kidde.)

28

7

In response to Defendants' evidence, Plaintiff submits her own declaration, as well as those of Ron Biskin, Rebecca Allen, and Michael Garlington.  These declarations do little to rebut the assertions of Defendants' declarants.  First, the declarations directly address fewer than half of the eight specific alter ego factors Defendants address.  More importantly, even putting aside that Plaintiff's declarants qualify their statements with phrases such as "in my perception" or "essentially," none of the Declarants appears to have had any relationship with any Defendant or Native Foods entity at the time of the alleged harm.  (Garlington Decl. ¶ 9; Allen Decl. ¶ 9).  All, by their own admissions, had separated from Native Foods by no later than August 2013.  Plaintiff has therefore not made a prima facie showing that the Foreign LLCs are alter egos of any other Defendant.

Although not entirely clear, Plaintiff also appears to argue, as she did in prior briefing, that the Foreign Defendants, including the Foreign LLCs, are somehow successors in interest to NFH.  Having already concluded that, on the current record, Plaintiff has established general jurisdiction over NFCH, the court need not address the successor in interest argument with respect to that defendant.  Even if NFCH were a successor in interest to NFH, however, it is unclear how that would have any bearing on any of the foreign LLCs, nor how the Foreign LLCs' "homogenous look of the various restaurants, their use of the intellectual properties formerly assigned to the forum Defendants, and . . . all of the Business' entities use and benefit from Plaintiff's likeness"

1  possibly confers personal jurisdiction on the Foreign LLCs.[1]  (Opp.

2  at 16).  Plaintiff having again failed to meet her burden to show

3  personal jurisdiction over the Foreign LLCs, all claims against

4  them are dismissed, with prejudice.

5         B.  Unfair Business Practices

6         As explained in this court's prior Order, California's unfair

7  competition law ("UCL") provides only two remedies for private

8  litigants under California Business & Professions Code § 17200:

9  injunctive relief and restitution.  Korea Supply Co. v. Lockheed

10 Martin Corp., 29 Cal. 4th 1134, 1143 (2003).  A private litigant

11 may recover unfairly obtained profits if the "profits represent

12 monies given to the defendant or benefits in which the plaintiff

13 has an ownership interest."  Id. at 41.  This restitution is

14 limited to property that was once in the plaintiff's possession or

15 money in which the plaintiff has a vested interest.  Id. at 49.

16        The UCL cause of action, which alleges that "Plaintiff has

17 been damaged and is entitled to monetary relief," continues to seek

18 impermissible monetary damages rather than restitution.  (SAC ¶

19 105.)  "Disgorgement of profits earned by defendants as a result of

20 allegedly unfair practices, where the money sought to be disgorged

21 was not taken from the plaintiff and the plaintiff did not have an

22 ownership interest in the money, is not authorized by the UCL."

23 Lee Myles Associates Copr. V. Paul Rubke Enterprises, Inc., 557 F.

24 Supp 2d 1134, 1144 (S.D. Cal. 2008); See also Profant v. Have Trunk

25 Will Travel, No. CV 11-5339-RGK, 2011 WL 6034370 at *4 (C.D. Cal.

26 _____

27        [1] As with Plaintiff's argument in connection with the prior
   motion to dismiss, her argument regarding specific jurisdiction
28 overlaps with her arguments regarding successor and alter ego
   liability.

Nov. 29, 2011) ("A restitution order requires that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." (internal quotation, alteration, and citation omitted)).  Plaintiff's UCL claim for damages is dismissed.

   C.   Breach of Contract

   Under California law, to state a cause of action for a breach of contract, the plaintiff must plead "a contract, plaintiff's performance or excuse for failure to perform, defendant's breach, and damage to plaintiff."  McKell v. Washington Mut., Inc., 142 Cal. App. 4th, 227, 253 (2006).  The contract may be pled by its terms--reciting it verbatim or attaching and incorporating it--or plead by its legal effect--alleging the substance of its relevant terms.  Id.  A complaint pled by legal effects is insufficient if a material portion is omitted.  Gilmore v. Lycoming Fire Ins. Co., 55 Cal. 123, 124 (1880).

   Plaintiff does not dispute that the SAC neither attaches or incorporates the Agreement verbatim.  Instead, she argues that it need not do so because the Agreement is attached as an exhibit to her counsel's prior-filed declaration.  This argument has no merit. Second, Plaintiff contends that she has pleaded the legal effect of the Agreement.  For the same reasons explained by this court in its prior Order, the court is not persuaded.  Although the Complaint does again allege that the Agreement required that "Defendants cease using any of the Plaintiff's name, likeness, image . . . words, quotations, and photographs" by a date certain, there are no allegations regarding consideration or other essential terms of the contract.  Indeed, the SAC fails to clearly identify

10

even the parties to the Agreement, as it refers to all Defendants
as parties to the Agreement, but also identifies Dolan, McGinty,
and NFH as the "named parties."  The breach of contract claim is,
therefore, dismissed, with leave to amend.

**IV.  Conclusion**

For the reasons stated above, Defendants' Motion is GRANTED in
part and DENIED in part.  Defendants' Motion to Dismiss for lack of
personal jurisdiction is GRANTED, in part.  All claims against the
Foreign LLCs are DISMISSED, with prejudice, for lack of personal
jurisdiction.  The motion to dismiss for lack of personal
jurisdiction with respect to NFCH is DENIED, without prejudice.
Plaintiff's claim for damages under the UCL is DISMISSED, with
prejudice.  Plaintiff's claim for breach of contract is DISMISSED,
with leave to amend.  Any amended complaint shall be filed within
fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: February 4, 2016

DEAN D. PREGERSON
United States District Judge